18442. SWAIN, formerly WELLS, *v.* WELLS.

ARGUED JANUARY 11, 1954—DECIDED FEBRUARY 11, 1954.

*Carlisle & Bootle,* for plaintiff in error.

*O. N. Singleton,* contra.

ALMAND, Justice. Mrs. Bessie Swain, formerly Wells, on May 13, 1953, filed in Bibb Superior Court her petition against George H. Wells seeking to have him adjudged in contempt of court for failure to pay alimony for the support of the two minor children of the marriage as provided in a decree of said court of October 9, 1945, it being alleged that the father was in arrears in the sum of $2,005.71. The father's response denied that he was in arrears, and asserted that the mother had abandoned the children and had failed to provide a home for them, and that he has supported and cared for them in his home. He denied that he was able-bodied and could pay the arrears, if any exist. The rule came on for a hearing, and after hearing evidence the judge passed an order in which he held: that the plaintiff, after the children had been awarded to her custody by the decree of the court, voluntarily surrendered their custody in favor of the father in 1946, and the alimony for their benefit then ceased; that, though the plaintiff may have later resumed physical custody, particularly of the son, the right to require the father to support the children was forfeited and could not be reinstated

by mere resumption of the rights and duties fixed by the court in its final decree; and that thereafter when the children were in her physical custody she became the visitee, and can not now successfully assert that she should be reimbursed for the support of the children where they were visiting her subsequently to the forfeiture. The court further found that, even if the mother had not abandoned the children and the father was liable for their support, he is not financially able to pay any substantial portion of the alimony, and he was discharged from the rule for contempt.

The mother filed a bill of exceptions, in which the order is assigned as being erroneous upon several grounds, among them being that the judge was without authority to modify and abrogate the final alimony decree of October 9, 1945, that his rulings that the mother voluntarily surrendered custody of the children in favor of the father in 1946, and that alimony ceased at that time, were contrary to law, and that his finding that the father was not financially able to make such payments was contrary to the evidence.

1. On the trial of the rule the judge, over objection of counsel for the mother, announced that he would not hear oral testimony from any witness other than the parties, but would receive evidence of other witnesses by affidavit. The mother contends that it was error to permit the testimony of witnesses by affidavit, on the ground that such testimony was ex parte and no opportunity was afforded her to cross-examine the father's witnesses. This being a rule for contempt, in which there was no prayer for setting aside or modifying the decree which awarded the minor children to the mother, but being solely to determine whether the father was in contempt of court, there was no error, under the rulings in *Warner* v. *Martin,* 124 *Ga.* 387 (1) (52 S. E. 446, 4 Ann. Cas. 180), and *Henderson* v. *Henderson,* 175 *Ga.* 702 (1) (165 S. E. 589), in restricting the evidence of witnesses, other than the parties, to affidavits. The ruling in *Young* v. *Young,* 209 *Ga.* 711 (3) (75 S. E. 2d 433) is not applicable here, for the reason that in that case the hearing was upon a motion to modify a final decree awarding minor children.

2. It appears without dispute that the husband and wife on June 12, 1945, entered into an agreement whereby the full cus-

tody of the two minor children, Sara Eugenia, age 13, and George H., Jr., age 7, was awarded to the wife, and in which it was agreed that the husband would pay to the wife, for the permanent support of said children, $7.50 per week for the support of the son until he reached the age of 21 years or married, and a like sum for the benefit of the daughter until she reached the age of 18 years or married. This agreement was made a part of the final decree in the divorce granted between the parties. It appears without dispute that the mother kept physical custody of the children until the summer of 1946, when the father went to the home of the mother and took the children and their clothing to his home in Buena Vista, Georgia. There was no agreement between the parties as to his taking the children, or as to how long they would visit him, the mother not being at home at the time the children were taken to Buena Vista. At this time the mother was in bad health, and because of, her nervous prostration or mental illness she was in the hospital for a short period of time, and was too ill for some time thereafter to work. After the children were taken to Buena Vista they were placed in school by the father; and under his testimony the daughter stayed with him until her marriage in the fall of 1949, except for 19 weeks when she stayed with her mother. The son, under the father's testimony, stayed with him from June 1946 until the end of 1948, except for a vacation period of 10 weeks in 1948; and for the years 1949, 1950, 1951, and 1952 he was either with his mother or in school at her expense, except for the summer vacations. The evidence shows without dispute that the daughter was in the physical custody of the mother for 19 weeks, and that the son was in similar custody for 170 weeks. The father admitted that the mother kept the son in Riverside Military Academy for two years at her expense, and that at the time of the trial he was in her physical custody. He admitted that he had not paid the mother any alimony since he took the children in the summer of 1946, having paid alimony only from October 1945 until May 1946. He testified that while the children were with him he clothed them and provided the necessaries of life. The mother testified that while the children were with him she had furnished all clothes for the children, and that the only thing the father did was to supply them with a home while they

lived with him. The alimony payments sought to be recovered by the mother were less than the amounts due under the final decree, even if the father be credited at $7.50 per week each for all weeks in which his testimony showed that he had custody of the children or either of them.

The father by his response to the rule was not seeking to modify the final decree, which awarded the custody of the children to the mother and provided for the payment of weekly sums by him to her for their support, but he was contending that the mother in June 1946 abandoned the children, and that consequently his obligation under the decree to make weekly payments of alimony ceased. The judge did not hold as a matter of law that alimony ceased at that time because of any alleged abandonment, but held that, when the mother voluntarily surrendered the physical custody of the children to the father, she forfeited her right under the decree to compel him to pay alimony from the date he took the children in 1946, and that, when she had the children thereafter, she merely had the right of a visitee.

In so ruling, the court erred. Where, after a final verdict, a decree has been rendered dissolving the marital relations between the parties and awarding permanent alimony to the wife in stated monthly sums until the children reach specified ages or marry, the decree thus rendered is final in its nature, and passes beyond the discretionary control of the trial judge; and thereafter he has no authority either to abrogate it or to modify its terms, such decree being res adjudicata as to the amount of alimony and its payment. *Gilbert* v. *Gilbert*, 151 *Ga.* 520 (107 S. E. 490). Where there is no reservation in a contract between the parties, or provision in a decree embracing the contract, reserving to the court the power to review the judgment or modify or abrogate it, such contract or decree is conclusive on the parties. *Estes* v. *Estes*, 192 *Ga.* 100 (14 S. E. 2d 680). Nor can the parties to such final decree, by subsequent voluntary settlement, affect, annul, or essentially modify the final decree so as to deprive the children of the support to which they are entitled by the verdict and decree; and where the court approves such settlement between the parties by a consent decree taken in accordance with the agreement, such decree is void. *Varble* v. *Hughes*,

205 *Ga.* 29 (52 S. E. 2d 303). In *Fortson* v. *Fortson,* 195 *Ga.* 750 (25 S. E. 2d 518), the custody of children had been awarded to the mother, and the father had been required to pay the mother a stated sum as alimony monthly. Subsequently she filed a rule for contempt, seeking to enjoin the father from interfering with her custody, and to have him adjudged in contempt for failure to pay the alimony. In his response, the father asserted that, subsequently to the rendition of the final decree, the parties entered into a new agreement whereby the custody of the children was given by the mother to the father. The agreement was in writing and was introduced in the hearing of the rule. On the question of whether or not this agreement was effective as transferring the custody of the children, this court held:

"2. In such a case, the State as parens patriae is materially concerned, and through agency of the court is virtually a party to the judgment, although the action proceeded nominally as one between the parents only. Accordingly, after such a decree as to custody, the parents themselves could not by a new agreement transfer custody to the father without the consent of the court as the representative of the State and the children." In the corresponding division of the opinion it was said (at p. 756): "Accordingly, in this case the original decree as to custody, insofar as the children themselves were concerned, was a matter about which the parents could not contract without the consent of the court as the representative of the State and the children. In other words, the judgment would embrace the interest of the State as a virtual party, in addition to the rights and obligations of the parents themselves, and their right to modify it would not extend to such public interest."

The contention of the father that the mother abandoned the children within the meaning of Code § 74-108 (3), which provides that parental power may be lost by failure to furnish the necessaries of life or by abandonment, cannot be sustained for the reason that the mother did not have custodial possession of the children by reason of the parental relation, but by reason of a court decree. As was said in *Fortson* v. *Fortson,* 195 *Ga.* 750, supra, where the decree was entered awarding the custody of the minors to the mother, the parents ceased to occupy their normal status, and "The children are thus wards of the court,

and the parent to whom custody is granted serves as a kind of receiver or trustee. The children are virtually if not actually in custodio legis, and pending this status even the limited right of private contract regarding their custody is gone. *Williams* v. *Crosby,* 118 *Ga.* 296 (45 S. E. 282); *Zachry* v. *Zachry,* 140 *Ga.* 479 (79 S. E. 115); *Lockhart* v. *Lockhart,* 173 *Ga.* 846 (162 S. E. 129); *Kniepkamp* v. *Richards,* 192 *Ga.* 509 (3), 517 (16 S. E. 2d 24). While we agree with counsel that the issue in this case is no light or trivial matter, the parents on divorce granted cease to occupy the normal status, and in our opinion the new agreement was entirely without force, as related to the matter of custody." P. 758. The failure of the court's custodian to properly care for and look after the children, to their harm and injury, constitutes ground upon which the court may be moved to change the decree awarding the children to the custodian, but the conduct of the custodian does not of itself abrogate or modify the final decree fixing the custody. We hold that it was beyond the authority or power of the trial judge, under the facts of this case, to enter an order which in effect nullified all past due instalments of alimony from June 1946, as well as all future alimony for the support of the boy. The alimony award being for the exclusive benefit of the minor children, the obligation of the father to comply with the award could not be abrogated either by agreement or by conduct of the parents. If, at the time the father took physical custody of the children in 1946, he had desired that their custody be taken from the mother by reason of her neglect, his only remedy was by petition to the court for a modification of the decree.

3. The trial judge in his order further held that, even if the mother had not forfeited her right to the custody of the children, the father's failure to make the payments of alimony was not wilful for the reason that he was not financially able to pay any substantial part, and that his inability was through no fault of his own, the failure being caused "to a great extent by unavoidable financial reverses and largely by the conduct of his former wife leading him to support said children while in his custody over a period of time when, as she contends, they should have been in her custody and by regular outlays of money in excess of that which he was ordered to pay." In *Kirby* v. *Johnson,* 188

*Ga.* 49 (3) (2 S. E. 2d 640), it was held that, in a contempt proceeding against a father for failure to pay alimony for the support of minor children awarded to the custody of the mother, it was not necessary that the petition contain an express averment that the children were in the custody of the mother. In the same case, in 188 *Ga.* 701 (4 S. E. 2d 643), it was held that the husband was not relieved from contempt by payment of sums ordered by the decree to a guardian subsequently appointed for the child upon the child's selection after arriving at the age of 14 years. Nor is the father entitled to take credit, as payment on the alimony decree, for sums voluntarily paid to the minor. *Fischer* v. *Fischer,* 164 *Ga.* 81 (5) (137 S. E. 821).

The evidence shows: At the time of the contempt hearing, the father was the owner of 165 acres of land valued at $2,700, which was subject to a $3,000 loan, and that he owed a crop loan of $4,300. In 1949 he bought 1,184 acres of land for $12,000, and sold all of it except 60 or 70 acres. Because of his high blood pressure and overweight, he had been in bad health for 5 years or more, and was unable to do any work other than to supervise operations of his farm and the tenant farmers thereon. Also, he remarried in January 1947, and his wife works and helps support the family. The evidence does not authorize a finding that, by reason of his financial condition, the father has at all times been unable to make any payment of alimony since June 1946, nor that his health is in such condition that he is totally unable to do any work of a profitable nature. It is apparent from the evidence that he is now, and for several years has been, operating a farm and managing its activities. It may be, and probably is, true that under the evidence he was unable to pay all of the back alimony, though this does not authorize a finding that he was wholly unable to pay a part of it or was unable to pay for the support of the son, who is now and has been, except for summer periods, since 1949 in the physical custody of the mother.

It is apparent from the order entered by the trial judge that his refusal to adjudge the defendant in contempt was based at least in part upon his erroneous opinion that the right of the mother to enforce the obligation of the father to pay alimony ceased in June 1946. It is our opinion that there should be another hearing, which should be conducted in the light of the rul-

ings here made, and for such purpose the order here excepted to is set aside and a new hearing ordered.

*Judgment reversed. All the Justices concur. Duckworth, C. J., Wyatt, P. J., and Hawkins, J., dissent from the ruling in the third headnote and the corresponding division of the opinion, but concur in the judgment of reversal.*